**UNITED STATES, Appellee,**

v.

**Mark A. SCHOOLER, 552 94 9147 Interior Communications Technician Third Class (E–4) U. S. Navy, Appellant.**

**NCM 75 1794.**

U. S. Navy Court of Military Review.

14 Oct. 1975.

CDR C. A. Buhler, JAGC, USN, Appellate Defense Counsel.

LT Mark D. Wigder, JAGC, USNR, Appellate Government Counsel.

En Banc.

## DECISION

FULTON, Judge:

This appellant was tried by special court-martial, military judge alone. He was convicted pursuant to his pleas of conspiracy to sell LSD in violation of Article 81 of the Uniform Code of Military Justice, 10 U.S.C. § 881, five violations of a lawful general regulation involving possession, use or sale of LSD in violation of Article 92 of the Code, 10 U.S.C. § 892 and one violation of Article 92 by possession of marijuana. He was acquitted of two additional specifications charged under Article 92. He was sentenced to confinement at hard labor for six months, forfeiture of $225.00 per month for six months, reduction to E–1 and a bad conduct discharge. Acting in accordance with a pretrial agreement, the convening authority approved confinement for five months, forfeiture of $150.00 per month for five months, reduction to E–1 and a suspended bad conduct discharge. This sentence was in turn approved by the supervisory authority, but the defense counsel was not served with a copy of the staff judge advocate's review contrary to the mandate of *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

We have requested and received briefs and argument on this question:

"Since the record fails to indicate compliance, reason for noncompliance, or even recognition of the rule announced in *United States v. Goode,* 23 U.S.C.M.A. 367, 370, 50 C.M.R. 1, 4, 1 M.J. 3, 6 (1975), and notwithstanding the absence of assertion of specific error in the 14 August 1975 brief of appellate defense counsel, what relief, if any, is warranted because of noncompliance with the *Goode* rule in this case?"

In *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975) the Court of Military Appeals declared:

"This case and others coming before the Court make it apparent that the post-trial review of the staff judge advocate has occasioned recurrent complaints about what should be included in it. Similar outcries have been voiced because of the misleading nature of certain reviews. Because of these continual and often repeated claims of error, plus the delay in determining their validity and correction, we deem it appropriate and expedient to take corrective action. Accordingly, it is ordered that on and after May 15, 1975, a copy of the written review required by Article 61 or 65(b), UCMJ, 10 U.S.C. § 861 or 865(b), be served on counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment. Proof of such service, together with any such correction, challenge or comment which counsel may make, shall be made a part of the record of proceedings. The failure of counsel for the accused to take advantage of this opportunity within 5 days of said service upon him will normally be deemed a waiver of any error in the review." 23 U.S.C.M.A. 370, 50 C.M.R. 4, 1 M.J. 6.

In this case we must find the proper remedy for a violation of the *Goode* mandate where the record of trial and the staff judge advocate's review are without discernible error. We affirm.

Although he declined to formally assign error to the Court, appellate defense counsel raised at oral argument the possibility that admission of evidence of a previous Article 15, 10 U.S.C. § 815 nonjudicial punishment was improper. If this were so,

then the staff judge advocate's discussion of the nonjudicial punishment in his review was also incorrect. This issue was noted on appellant's "appellate rights statement," when he indicated that he desired legal representation before this Court. Appellant listed two "errors or matters . . . [which] are those which I and my trial defense counsel believe may be grounds for relief." These assigned errors were "improper argument by trial counsel," and "NJP not properly admitted on record."

As part of his case in aggravation, trial counsel attempted to introduce into evidence two documents from appellant's service book to show that he had previously been to captain's mast for wrongful possession of marijuana and for dereliction of duty. The military judge sustained trial defense counsel's objections to the admission of the documents and they were not received into evidence or considered by the court (R. 37). Lieutenant C_____, a judge advocate attached to Naval Station, Adak, then testified that he had personally accompanied appellant to captain's mast for possession of marijuana in the spring of 1974. Using a report chit to refresh his recollection, Lieutenant C_____ stated that appellant's nonjudicial punishment was awarded on 11 April 1974, consisted of 15 days' correctional custody and forfeiture of $150.00 pay per month for one month and that appellant did not contest the charge.

■■■■ Defense counsel objected that Lieutenant C_____'s recitation of the nature of the offense and his statement that appellant did not contest the charge were hearsay. He also objected to Lieutenant C_____'s use of the report chit to refresh his memory. These objections were properly overruled by the military judge. Lieutenant C_____'s in-court testimony, subject to cross-examination, about a captain's mast proceedings which he personally attended and observed was not hearsay. *See generally,* Manual for Courts-Martial, 1969 (Revised edition), ¶ 139. The use of the report chit by Lieutenant C_____ to refresh his recollection was entirely proper under the provisions of ¶ 146a of the Manual.

■■■ Another issue relating to Lieutenant C_____'s testimony, although not addressed by trial or appellate defense counsel, merits some discussion. Subparagraph 76d of the Manual, entitled, "Optional matter presented when court-martial constituted with military judge," permits the Secretary to prescribe regulations under which the trial counsel may "obtain and present to the military judge any personnel records of the accused or copies or summaries thereof" during the presenting phase of the trial. Under this authority, the Secretary of the Navy has issued the regulation contained in Section 0117 of the Manual of the Judge Advocate General (JAGMAN), pursuant to which records of nonjudicial punishment of an accused may come before the court if they have been properly prepared and maintained and the nonjudicial punishment itself was awarded within two years of any offense of which the accused stands convicted. In the case *sub judice* the evidence of NJP took the form of personal, live testimony rather than documentary evidence. We do not find this to affect the admissibility of the evidence of nonjudicial punishment. In *United States v. Johnson,* 19 U.S.C.M.A. 464, 42 C.M.R. 66 (1970), the Court of Military Appeals considered the question of whether "provision for the use of evidence of nonjudicial punishment before sentencing is a valid exercise by the President of a Congressional grant of authority," or whether admission of such proof conflicted with the congressional intent attending the enactment of Article 15. The Court concluded that:

"We perceive nothing in the legislative history of Article 15 that is inconsistent with use of records of the nonjudicial punishment by a court-martial when it is deliberating on an appropriate sentence. There is abundant evidence that Congress desired an alternative to the handicaps resulting from a record of conviction by court-martial. But nothing cited convinces us that Congress intended for the armed forces not to record nonjudicial punishment or to conceal a record of it if a

person who had received such punishment later were tried by court-martial. Statements that such records should not be used as evidence of prior convictions reflect an awareness that nonjudicial punishment would not be considered a conviction, instead of that it would not be considered at all." 19 U.S.C.M.A. at 467, 42 C.M.R. at 69.

The reference to "records" in Section 0117 of the JAGMAN permits trial counsel to introduce proof of an accused's prior nonjudicial punishment by convenient use of an item which will accompany a service member when he is transferred from one command to another, perhaps far removed duty station; his service record book. It would be illogical to interpret this provision giving the government eased access to proof of a fact as preventing its utilization of an alternate, equally convincing method of proving the same fact, namely, live testimony by a participant or observer present at the nonjudicial punishment proceedings. Lieutenant C_____'s testimony established that nonjudicial punishment had been awarded within the two-year period established in Section 0117 of the JAGMAN and we find that it was properly admitted and considered by the military judge.

We find no impropriety in trial counsel's argument and note with approval the trial judge's statement that he would not consider any personal opinion contained in the argument.

We are thus satisfied that the review of the staff judge advocate is not erroneous or faulty for failure to discuss error in the trial proceedings. It is not otherwise inadequate or misleading. We must therefore consider the appropriate remedy, if any, for a *Goode* violation in the context of an unobjectionable staff judge advocate's review.[1]

In the course of its opinion in *Goode,* the Court of Military Appeals gives two reasons for establishing the new rule: "[b]ecause of these continual and often repeated claims of error, plus the delay in determining their

validity and correction, we deem it appropriate and expedient to take corrective action." We believe *Goode* encourages resolution, as far as possible, of all questions regarding the staff judge advocate's review at the level of the reviewing authority. Service of the review upon counsel for the accused will thus enable him to take steps to correct or clarify matter in the review before it reaches the hand of the reviewing authority, thus eliminating the prejudicial aspect of the erroneous material before his client can be harmed thereby. This will further safeguard his "first and perhaps best opportunity to have his sentence tempered by mercy and to obtain an additional chance to prove his worth to his service, and his country," *United States v. Lacey,* 23 U.S.C.M.A. 334, 336, 49 C.M.R. 738, 740 (1975). Prejudicial misstatements by the staff judge advocate will be defused at a time when corrective action may be taken, and absent affirmative action by counsel for the accused, the matter will lose its continued viability on appeal. *Compare United States v. Heflin,* 23 U.S.C.M.A. 505, 50 C.M.R. 644, 1 M.J. 131 (1975). Thus, delay occasioned by our determining the validity of the review and responding to error by returning the review for correction and a new action will be avoided. In addition, counsel for the accused by waiving certain errors in the review may decline for his client the often Pyrrhic victory won by an appellant whose review is returned for slight revision and a new action by the reviewing authority at a cost of several months' delay in the final resolution of his case.

The situation that *Goode* is intended to remedy, then, is the staff judge advocate's review that is erroneous or misleading. The Court of Military Appeals adverted to counsel for the accused's opportunity "to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment." We do not read this language to mean that

---

1. It appears that the failure to comply with *Goode* was inadvertent. We do not condone a purposeful failure to comply with this or any

other mandate of the Court of Military Appeals.

a failure to serve counsel with an error-free review must be remedied because there may be non-erroneous, adequate and not-misleading commentary upon which counsel wishes to comment. *Goode* does not provide defense counsel with his only avenue for communication with the reviewing authority or the appellate courts. Counsel has the power and indeed the obligation to prepare an appellate brief pursuant to ¶ 48k(2) of the Manual for Courts-Martial, 1969 (Revised edition), or a clemency petition pursuant to ¶ 48k(1) and ¶ 77a of the Manual for inclusion in the record if they are appropriate. In the appellate brief or clemency petition he may discuss any matters in the record or otherwise that he feels merit consideration by the reviewing authority as he ponders his action in the case. *Goode* is not an invitation to counsel to forego these procedures in favor of waiting for the preparation of the review in order to raise issues in "rebuttal" which would be fit subjects for a brief or petition.

█ As there is no error in the review of the staff judge advocate, no interest would be served and the interest of a timely and expeditious end to litigation would be impeded by a return of this record and review for consideration and possible reply by defense counsel. We find no reason to invoke the remedy of dismissal in a case where no prejudice to the appellant has occurred, UCMJ, Art. 59(a); 10 U.S.C. § 859(a); MCM 1969 (Rev.), ¶ 100. We do not intimate that in an appropriate case of non-compliance with *Goode* we would not return an erroneous review for service upon counsel and a new action by the reviewing authority, or that we would not consider ourselves impelled by *Goode*'s concern with expedition to undertake corrective action to extirpate the effect of the error ourselves.

The findings and sentence as approved below are affirmed.

Chief Judge CEDARBURG, Judges LAPPIN, MURRAY, MALLERY, GLASGOW, GREGORY and NEWTON concur with Judge FULTON.

EVANS, Senior Judge (dissenting):

Judge Duncan stated in *United States v. Sosville,* 22 U.S.C.M.A. 317, 320, 46 C.M.R. 317, 320 (1973):

"The rule is well settled that a plain and unambiguous statute is to be applied and not interpreted."

The procedural rule announced in *Goode* provides:

". . . it is ordered that on and after May 15, 1975, a copy of the written review required by Article 61 or 65(b), UCMJ, 10 U.S.C. § 861 or 865(b), be served on counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment." [1]

Rules of our judicial superiors like statutes should be strictly applied to insure uniform application, *see United States v. Brooks,* 23 U.S.C.M.A. 1, 48 C.M.R. 257 (1974).

While it may be the instant post-trial review has no discernible factual error, the point is appellant's legal representative was not afforded an opportunity to ferret out errors. The *Goode* decision grants this right of inspection. The failure to comply with *Goode* here was an inadvertent oversight. An appellant may not be deprived of his legal right simply because the negligence of the government was inadvertent, *United States v. Parish,* 17 U.S.C.M.A. 411, 414, 38 C.M.R. 209, 212 (1968). Failure to strictly enforce *Goode* and only test a review for discernible error at this level may encourage some staff judge advocate to ignore the rule, particularly where the conviction is based on guilty pleas and the review is not lengthy.

In our view the doctrine of discernible prejudice leads to an unequal application of the *Goode* rule. This is analogous to the principle that the *Burton* presumption should not be strictly enforced because an appellant's offenses are not serious, *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). This approach was re-

---

1. at 23 U.S.C.M.A. 370, 50 C.M.R. 4, 1 M.J. 6

jected in *United States v. Brooks, supra.* Chief Judge Duncan stated at pages 2, 258:

> "This Court had often been faced with records in which the accused was held for long periods of time in pretrial confinement as the result of dilatory action on the part of the Government. As it normally has control over the accused as well as the witnesses and the evidence in the case, little excuse can be found for the delays encountered. Thus, we determined to place a heavy burden of explanation on the Government, after 90 days' pretrial confinement elapsed, to rebut an otherwise operable presumption that the provisions of Article 10 had been violated. *United States v. Burton,* supra. We know of no other way, nor has any been called to our attention, by which we can insure that the congressional mandate of speedy disposition of charges is satisfactorily executed.

> "Thus, as it is the period of confinement with which we are concerned and not the basis on which it was ordered, the fact that the detention was segmented or that reconfinement was justified is not material. *To hold otherwise would mean that the BURTON presumption would not apply in the case of a moderate offender like the accused whose release on occasion is deemed justifiable, but paradoxically the presumption would apply only to the serious offender whose continuous confinement is believed necessary. We see no reasonable distinction between the two.* The intent of *Burton* is to get both tried within a 90-day period, absent an extraordinary reason for additional delay." [Emphasis supplied.]

To paraphrase *Brooks,* disposition of the case at bar should be resolved on the following rationale:

> The Government urges the *Goode* rule need not be enforced because no errors in the legal review are discernible. This argument is rejected. The aim of *Goode* was to alleviate assertions of error covering various matters in the review. To hold that *Goode* need not be enforced where an error is not patent would deprive an accused of his judicially granted right of inspection. It may be some errors are not recognized by appellate counsel or this court. The right of inspection must be afforded in all cases and not just those where the review is recognized as inadequate.

> If the doctrine of discernible prejudice is the test, accused, particularly those offering guilty pleas, may be deprived of an important right covering the sentence deliberations of the reviewing authority.

In our opinion the doctrine of discernible prejudice fashioned by the majority to decide the issue blunts the vitality of the *Goode* decision.

We would return the record to the Judge Advocate General of the Navy for submission to the officer presently exercising general court-martial jurisdiction over appellant. In the event trial defense counsel is unavailable to represent appellant on the matter, an Article 38(b), UCMJ, 10 U.S.C. § 838(b), counsel should be appointed to receive service of the legal review and review it, *see United States v. Silas,* 23 U.S.C. M.A. 371, 50 C.M.R. 5, 1 M.J. 7 (1975).

Senior Judge WRAY concurs with Senior Judge EVANS.